will hear argument next in tandem cases Sullivan v. Carver and so on v. Nassau County Interim Finance 181587, 181606, 181634. May it please the court, Shira Shendland for all of the plaintiffs. Your honors, I'm reserving two minutes for rebuttal and I start with this. Every case challenging the imposition of a wage freeze on municipal workers has been reviewed under the contract clause of the United States Constitution except this case. This court in Buffalo Teachers did a constitutional review. The New York Court of Appeals in Subway Surface did a constitutional review. And the Sixth Circuit recently in Welch v. Brown did a constitutional review. Indeed, just two months ago, this court in Barr v. City of White Plains reviewed a district court's contract clause analysis of a city ordinance that terminated full payment of health insurance premiums for retired police officers. We are asking this court to give us that same constitutional review, which we have not yet had. Pardon me? Why was what happened here an exercise of legislative power? Well, that's exactly the central question. That's exactly the central question, and that's where I was going to turn. The key question here is whether the authority's action in imposing a wage freeze was administrative or legislative. Okay, let's assume you're right and that this was not the statute itself so determining the result in this case that the statute should have been attacked rather than this case. Let's assume I agree with you on that. And that then the question is, was the government acting as government or was it welching on its contract, because that's the issue in these cases. Do we then have to send it back to the district court or can we decide the issue directly ourselves? That this was perhaps sufficiently the government governing that this is not an infringement of contract, what we did in the Buffalo case here. That is, let's assume you're right that this was legislative action. Right. Which I'm inclined, frankly, to think it was. But then, is the case one that has to go back to the district court or should we be deciding this ourselves? I think it's very clear, your honor, that it must go back to the district court. We've had a lot of discovery. There's a long fact record and there's a three part test for determining whether something is acceptable under the contract clause, whether you can impair a contract under the contract's clause. And that three part test, but I was just going to say, has never been done. We send it back. Yes. We were to send it back. Yes. We have not been as clear as we might have been on whose burden it is to show that this is governmental action rather than welching. You'll notice that in Buffalo, we use the passive. Instead of saying the government must show this, we said it must be shown. And that's an odd kind of thing. Supreme Court was, I think, rather clearer in US trust in what it said. And the question of whose burden it is at that point is a very important one. So you think you might address that? Yes, I think I agree with you that the burden of proof is very important. And I think the burden of proof would be on the county to meet the three part test that's been set up by this court in Buffalo Teachers. Was this a legitimate public purpose in doing this? And there's a question about that here. It may not have been, because it may have been political in nature. Was it a substantial impairment? Well, most definitely. The wages were frozen. But it's the third test. I feel to you and to the other side that I wrote an article on this in 1959. I didn't locate it. I have, I mean, back then, I had some views. Now, I was a child, so I may have changed those views. But I did write an article on this. Well, I do want to turn to the third part of the test, reasonable and necessary. Because what has been said about the third part of the test is that it has to be a last resort to impair a contract. That's in Buffalo Teachers. You used the word last resort. Yeah. But what happened here was a first resort. Well, but remember we have said that diminishing taxes doesn't, cannot be the only thing. And the interesting thing to me here, all right, here it wasn't raising taxes. It was lowering taxes. On the other hand, lowering taxes was part of a political campaign. And being part of a political campaign could be said to be governing rather than welching. I don't know, but it's an interesting thing that it was part. Now, the whole GATT thing is a different thing. And that may cut into this as well, the whole accounting business. Yes, that's right. That was not done at the time. That's why I say it was a first resort, not a last resort. It's only after the wage freeze was imposed that the county then said, we better hire Grant Thornton to see if there's something we could have done. But that was after the wage freeze was imposed. So it seems to me it has to go back to the district court. That full year of discovery and that long fact record has never been looked at. We have not had that review. And you know well that fact finding in the first instance is for the district court. The district court needs to look closely at the record, apply the three-part test, make a decision, and then whatever that decision is, it is. And it's either going to be something appealed or not. But we have not had contract clause review. Now, I know that you said you were leaning toward thinking that it's legislative. But I must speak to, of course, the whole panel. It's clearly legislative because the act itself made no impairment. It imposed no wage freeze. In fact, the act sets forth no criteria for when the authority should impose a wage freeze. It simply doesn't tell us. Whereas, one of the preconditions is a control period. And for that, the act lays out five specific prerequisites for imposing a wage, I'm sorry, a control period. But there's no prerequisites. And you can look at the act, at the Joe Independence page 243, you can look at it. There's simply no guidance in the act. It's left to the sole discretion of the authority. Let's make another argument which is interesting and I think should be that the act put your clients on warning that this might happen. And so that this wasn't a breach of contract at all because they were already on warning that this might happen. Now, that's a different argument. I mean, they merge that together with this was not a legislative act. But there is a separate argument which may say if the statute tells you that this will change under some circumstances. No, no, not will change, but something may occur in the future. All the act said is there's a possibility, an authority has the power. The word is empowered to impose a wage freeze. The fact that somebody is empowered to do it is a theoretical possibility. It took 11 years, 11 years. The parties discussed in arbitration proceedings in negotiating the contracts, wasn't it? Yes, yes, it came up. Again, the possibility. There's no surprises that it actually. Sorry? So there's no surprise that it's part of their settled expectations as to what the world might look like. Oh, I disagree. Again, there's a world of possibilities out there. Anything can happen here today. But a possibility is not something that is ripe to challenge. There was nothing in the act that could have been challenged because there was no impairment. Rightness aside, I guess my point is more has to do with the parties in negotiating the agreements that you claim to be have been violated. In the arbitration proceedings and the negotiations, they were aware that NIFA had this authority and may well exercise it, right? I agree with you that there was always that possibility. But when it occurred, it seems to me that the unions had the right to say this was inappropriate. Look at the three-part test. Ask a court to review it. A court should consider whether it was appropriate to impair these contracts. And that is the review that we haven't had. Was this a last resort or a first resort? Was it a legitimate public purpose or not? Sure, they knew it could happen, but that doesn't give up their rights to get a review under the Constitution. Your argument has to be even broader, that if something of this sort is sufficient to say that there were no expectation in contract, then a government can impair any contracts by passing a statute which suggests under some circumstances we will breach it. Yes. That gives the government an incredible amount of power to breach contracts. Well, that's exactly right. And in Buffalo Teachers, you said that would create an end run around the Constitution. That is a quote from that opinion. If we can't review what the authority did 11 years after the act was passed— I think your point has to be that the same thing was faced in Buffalo and that we did not say that that was enough to allow the thing. Yeah. In Buffalo, did the act precede the contracts at issue or did they follow the contracts at issue? Yes. The timing issue is really a red herring because since we say that here the legislative act is what the authority did, that was three years. I would disagree with you on that. Just answer the question. Is in Buffalo, did the relevant act proceed or follow? Proceed. But what I'm trying to say is that if the legislative act here is the action of the authority, it follows. I understand. So look, there are two arguments. One is look at the act, the initial act. The other is, and this is your argument, look at the NIFA's exercise of power. Right. Right? And that's the relevant legislative act. Correct. If I disagree with you, I would look at the initial act in 2000. But what in that act impaired the rights of the workers? I haven't finished my question yet. Okay. If I disagree with you, then that act preceded the contracts and you would lose. Oh, but I would be surprised if you could find that since the act itself did nothing to impair the contract. You look at the wage freeze language. The relevant issue is a subsequent issue. That's another issue. The issue before us, as you acknowledge, is which of these things counts as a legislative act. Oh. And you are saying it's the NIFA's exercise of it's the wage freeze. Yes. That is the legislative act. That is right. Usually when we think about legislative acts, I may be wrong, we think about hearings. We think about different parts of that that we can then identify as making up a legislative act. There was none of that here. Oh, but your honor, I disagree. There really was. The authority gave notice of public meetings. The authority held hearings. The authority... Were there hearings? Oh, yeah. The authority then issued an order. The authority made 19 pages of factual findings. It's exactly what a legislative act is. And in Ross v. Oregon in 1913, the Supreme Court said legislative acts are not limited to legislatures. Whoever exercises that authority in a content-based inquiry is acting as a legislature. There's nothing... Where's the line? How would you articulate the line between a legislative and an administrative act? Legislative act is anything that is forward-looking, this is from the Supreme Court, is forward-looking and changes existing law or the status quo. This was clearly legislative. It affected all the workers, not individuals. So it's not administrative. It doesn't apply to some individuals. It applied to all the workers. It was forward-looking and it changed the status quo. But it was a particular set of... I mean, in one sense, it's a very particular set of facts. In other words, this particular financial crisis at this particular point requires us to have a wage freeze. Well, that's the question. Does it require a wage freeze? And that's what we ask you to review. But who imposed the wage freeze? The statute itself said we empower the authority in its discretion to decide whether to impose a wage freeze. There's no wage freeze in the act and there's no guidance for when to... If you disagree with the decision to administer a wage freeze, isn't that what's appropriate for an Article 78 proceeding? Challenge to administrative action? This is definitely not an Article 78 proceeding, respectfully, because there's a constitutional question of whether it was appropriate to impair the contract rights of the municipal employees. That's what the contract clause says, that a government may not impair the rights of the citizens in contract. That has never been reviewed. Article 78, Article 78, of course... Are you saying that you couldn't have run an Article 78 proceeding? Or I'm not sure what your argument is. I understand the contract clause. Yes, I know you do. The standard of review of arbitrary and capricious that is applied in an Article 78 is not the same standard of review that should be applied under the contracts clause. The contracts clause, as you said in Buffalo Teachers, is a three-part inquiry, ending with reasonable and necessary. That's a very different inquiry than whether something is arbitrary and capricious. Well, I think we're putting together two or three different things. One is whether this statute was attackable on its own as a possible infringement or would have been had it been after the fact. And that, you say the statute is so vague that it could not, the actual decision. The other question is, did this statute mean that any contracts that were made after this statute was passed were such that a breach, what would normally be a breach, would not be a breach because the parties knew that under some circumstances this contract, a freeze could be imposed? And that's a different question. The district court united the two questions in a way which I think is confusing. But there is an argument, and I think it is the strongest argument for the other side, that there was no breach of contract at all here because the parties knew that this could happen. Now, what is your answer to that? My answer is the same as I think I said to Judge Lohier. The fact that something may happen does not make something right for review. What could we challenge? Could we say it's possible that someday, 11 years later, some authority? What you're saying is that the statute did no more than say what, after all, we have already held constitutionally that the government may not contract away its right to govern, and if that happens, then the government can govern. But the government, that this statute didn't say that apart from these constitutional rights of the government to breach the contract, it gave no further power. It gave no further? It gave no further power to the government to welch. I mean, you know, you can have a statute which would say you can get out of this contract any time you want, or you can have a statute which essentially says you can get out of it when the government needs to get you out of it for governing purposes. But there is guidance here. It has to be in an exercise of police powers. It's not unlimited. It basically said within the limits of the contract clause. That's the difference, is that it did set out limitations. Thank you very much, and you reserve some time for rebuttal. Thank you. We'll hear from Mr. Gunther. Good morning, and may it please the Court. Christopher Gunther on behalf of the NYFA appellees. I think a good place to start on this issue of administrative versus legislative is a key decision of the State courts, the Appellate Division Fourth Department foley against Masiello, interpreting or making the distinction about whether I don't see why that's relevant. I mean, the State may decide that this is administrative or this is not, but what does that tell us about the constitutional question of whether this is covered by the contracts clause? That isn't a question of State law. I think it's still a question, though, Your Honor, respectfully, of it. You have legislative acts on one side, administrative acts on the other. And foley had to do with the issue of statute of limitations, but they still had to make the same decision that this Court is faced with as whether the wage freeze in that case it was by the Buffalo Fiscal Stability Authority, whether it qualifies as legislative or administrative. And I just would like to briefly read what they concluded. The action in imposing the wage freeze was administrative rather than legislative given its individualized application, limited duration, and informal adoption. And I suggest those are the same three factors that this Court should consider. Could this statute, if it had not preceded the act, but could this statute have been attacked under the contract clause? Could a statute written like this statute be attacked under the contract clause as violating a contract? I think so. And there's only one case that really addresses that issue, Your Honor. How could you possibly attack a statute which gave so much broad power of individual decision-making be attacked under the contract clause unless the statute specified that this must happen, which this one didn't? I mean, Your Honor. The one case cited by either party about whether the statute could be attacked upon enactment is Donahue v. Nassau, in which Judge Spat in the Eastern District said, even though the powers granted to the county executive by the Taxpayer Relief Act had not yet been exercised and had not affected the contracts at issue, which were labor agreements, it was right to have a decision. He didn't join the statutory provision in that case against any future violations of the contracts clause. But I think, Your Honor, when you get into the administrative versus legislative question, it's really the Foley case is talking about the same factors that Your Honor should consider from a constitutional perspective. And I would particularly highlight the idea that the informal adoption. Now, my friend said that NIFA had held legislative hearings. All NIFA did was hold public hearings because every act that a public board like NIFA had to do would have to be taken in a public vote by the NIFA directors in a public hearing. They didn't conduct legislative hearings of the type that you're familiar with that Congress might employ. Nothing about the way NIFA dealt with these issues was legislative in character. You can call all the detailed findings in NIFA's determinations, my friend calls them legislative findings. That's not what they are. They are an assessment of the county's then current financial condition in the same way this court or any administrative agency tasked with making a decision makes determinations, looks at the facts before them, mostly on paper, not after legislative hearings. Where is the line? How would you articulate the distinction between legislative and administrative? It's really a question of whether the body or the individual charged with the power is applying a statutory standard already in existence to future events. And that's what happened here. NIFA had to look at the then existing financial condition of the county, how a wage freeze might help close the budget gap, and then made a determination based on those then existing facts that the wage freeze was necessary. Can't you always, on your argument, wouldn't you always be able to avoid the contracts clause simply by delegating authority, which you can call legislative or administrative, to an administrative agency? I mean, isn't this exactly what is troublesome about delegating of authority to agencies, the kind of thing Justice Gorsuch and others have been questioning about? I mean, you know, if you could get by the contract clause by passing a statute which says we will have an agency like this one now be able to decide what to do, that's the end of a contract clause. But the key question, Your Honor, that begs is what is being delegated? And it's this distinction between individualized decision-making, as Judge Loyer noted, making a decision based on particular facts and circumstances, and granting broad legislative authority. And I would suggest— The decision is whether there should be a freeze, whether we should do something different because of the accounting. There are any number of decisions which could have been made, because of which it might very well be that on looking at the facts of a particular case, as we did in Buffalo, we would say that this is the government acting as government, and therefore not welching, and therefore it has a right to do what it did. But that's what the agency had the power to do, and isn't that what we have to look at to see whether it happened? It was not a ministerial act saying do this, in which case the statute can be challenged, but a question of whether what NIFA did, what the agency did, was justified under the contract clause or a breach of it. Your Honor, it was administrative decision-making, and it's different from the emergency powers cases out of the Sixth Circuit, where basically the legislature gave to the emergency manager carte blanche and said you can pass your own local ordinances, you can repeal the ordinances that are on the book, you can amend them. That's not the type of power NIFA was given. They were given a specific administrative authority. What is the difference between ministerial and administrative? I'm not sure that—I would use the word administrative. I'm not—ministerial makes it almost sound like it's minor. These were important issues, but the question is really, I think, the heart of it is are they making decisions based on an individualized assessment of the facts and circumstances that exist for a particular time? And that's what they did in 2011, looked at the details of that budget, where the wage freeze could be kept in, how can you close the gap, and determining whether or not the wage freeze was necessary. And what sort of an act, that is, what sort of a statute would be subject directly to an attack based on or a challenge based on the contract laws? I will give you two examples that are in cases cited by the parties. The first is the Taxpayer Relief Act that was passed in Nassau County that was enjoined by Judge Spatt. That was a case where so much power was given to the county executive. You can run over the contracts if you think it's useful, and that was legislative authority that was granted to the county executive in that circumstance. The second is the emergency manager cases out of the Second Circuit because the legislature in Michigan basically said to the emergency managers, you can pass any local ordinance you'd like, you can repeal any local ordinance you'd like, you can amend them. Whatever you do you want to do, you can do it if that's what makes you individual. JUSTICE BREYER. One way to view what happened here, I'm not saying that I agree or disagree because I'm somewhat sympathetic to the unions here, but one way to view it is that NIFA was given significant power to, in effect, legislate by saying we're going to freeze the wages of all of these unions, union members. Why isn't that effectively a form of legislation?  GOLDBERG. Because they weren't given carte blanche to exercise the State's power. They were given an administrative specific task to do a conductive analysis based on particular circumstances. JUSTICE BREYER. The State could have done that, right? MR. GOLDBERG. The State could have done that directly. MR. GOLDBERG. They could have done that directly, yes. JUSTICE BREYER. The contract clause doesn't talk about administrative and legislative. It talks about law. It says law. At a time when there wasn't delegation of authority of the sort we have now, we have had delegation of authority which, in effect, makes administrative agencies often make law. That's what delegation of authority is. The question is, was this a delegation of authority that is essentially lawmaking, or was this a delegation of authority that was so specific that there was no lawmaking? But the notion that agencies make law and that that wording of the word law in many early cases by the Supreme Court, as delegation of authority was beginning to be done and law was interpreted broadly, can't be doubted, can it? MR. GOLDBERG. I think the historical perspective, Your Honor, is quite correct. You're bringing to it. But I would say this. In 1787, when the contracts clause was originally in the Constitution, things were, as Your Honor described, there weren't really administrative agencies. But in the early 20th century, in the early 1900s, the administrative states, so to speak, or the administrative agencies began to be out there. And for more than 100 years now, there was precedent from the Supreme Court and from the lower courts that when they drew this distinction between administrative action and legislative action, and that's what this wage freeze fits comfortably  SENATOR COONS, CHIEF JUSTICE OF THE COUNTRY, I don't disagree with you that when the statute essentially tells an agency, you must do this then, then it is the statute that must be tested. And when instead it gives the agency the kind of delegated power that allows it to make the decision one way or another, then the question is, is that decision welching or is that decision governing? Which is the essential question that we have to ask in contract clause cases, isn't it? MR. GOLDBERG. So two points about the NIFA Act on that. First, they didn't have to impose the wage freeze. What the statute gives them, and NIFA said this explicitly in its resolutions, is that they had discretion to grant to impose the wage freeze. And that's why they went through a volatile analysis. SENATOR COONS. That may well be why you might win below. MR. GOLDBERG. Yes. And second, the second point in the statute is, so it granted them discretion, which they exercised after analyzing the reasonableness of the wage freeze under all the facts and circumstances. And the second thing is, even if they decided to impose a wage freeze, I've heard my friends say, oh, they had to do it as to all county employees. But they didn't, because the statute very carefully says, if any union offered up concessions that NIFA determined in its discretion, it doesn't use the word discretion. It's clear that's what the statute contemplated. In its discretion determined that a particular union made a contribution toward the fiscal crisis that was adequate, NIFA could, in its judgment, exclude them from the wage freeze. Classic, individualized assessments. It's not all wages are frozen, that's the legislature speaking. It's let's look at a particular set of circumstances and a particular union's particular union. BRENNAN What you're suggesting is that the greater the amount of discretion given to whatever the agency is, NIFA in this case, the less likely we are to view that as a legislative act. MR. GOLDBERG. I didn't mean to suggest that. I was trying to respond to Judge Calabresi's decision that most administrative frameworks involve some aspect of discretion in administrative decision-making. JUSTICE BREYER. But isn't that the key, that the way you've described the statute and what it gave to the agency makes it impossible to attack the statute as an infringement of a contract clause, precisely because it gives the agency the power to decide that it must do this because it is governing and not welching? And so we can't possibly strike that statute down because that statute doesn't violate the contract clause, so that you have a situation where you're telling us they've done it in a way where we can't get at the statute because it gives sufficient authority. But then if the agency then acts in a way that isn't acting to govern, and I'm not saying they aren't doing here, but they decide, ha, here's a good way of welching on a contract, then they can get away with it. And that is the end of a contracts clause, which I think is a fairly dangerous thing to do constitutionally. MR. GOLDBERG. Your Honor, even in that circumstance, NIFA is not operating with no constraints because, as Judge Park said, there's Article 78 proceedings that can find any administrative agency of any New York authority in the way they act.  JUSTICE BREYER. And this may explain why there are so few contracts clause cases. MR. GOLDBERG.  JUSTICE BREYER. There are relatively few. MR. GOLDBERG. Correct. And just to finish that thought, if I may, I know I'm over my time, but the unions did file an Article 78 proceeding and litigated at length in Article 78 proceeding. It was unsuccessful. So what they're just looking for is another clause. JUSTICE BREYER. Is that on the record somewhere? MR. GOLDBERG. It is. It is, Your Honor. It all proceeded ñ it came ñ that administrative Article 78 proceeding came after our first visit to this Court in 2013 and today. JUSTICE BREYER. But would you ñ but historically, the one thing one can say about the contracts clause is that it was there precisely so that States couldn't decide when to infringe contracts. I mean, that is one of the few things that we historically can say about the Constitution, that the Constitution was written not to let States go about their way infringing  I mean, that ñ JUSTICE BREYER. We agree with that. MR. GOLDBERG. There are a few ñ JUSTICE BREYER. You agree with that, right? MR. GOLDBERG. I would agree with that. But what you have here ñ what my adversaries are fashioning is some crazy plot where the State, back in 2000, when it bailed out the county with ñ by creating NYFA, was thinking, 11 years later, we're going to impair the contracts that the unions entered into in 2007 and 2008. That's not the case here. They ñ JUSTICE BREYER. Well, before you sit down, Mr. Guenther, what is your view, your client's view, of whether, if we disagree with you about the legislative act and whether this counts as a legislative act, this should be remanded back, or should we go on to consider the issues of impairment and so on? MR. GUENTHER. This Court can affirm the district court on any basis supported by the record. And I would urge your Honors, if you need to reach the summary judgment issue apart from the legislative issue, the administrative issue, that you resolve that issue now. And ñ because this litigation has now been going on in various forms since 2011. And the record is fully developed. I could make arguments about that record, which are why it was reasonable and, frankly, necessary for NYFA to act as it did. I think those ñ I won't ñ I don't have the time to tell your Honors now, but it's fully in the briefs that ñ JUSTICE SOTOMAYOR. You know, I came in thinking we might be able to decide this ourselves. But opposing counsel says there's been no discovery. It would be interesting to find out if NYFA acted for ñ after all, what you're looking to is motive, essentially. Are they deciding according to a political, governmental function, or are they doing it as a private party negating? And she said ñ opposing counsel said this is something that we really could find out more on discovery.  MR. BOUTROUS. Well, I think what she said is that there hasn't been fact-finding. There was plenty of discovery in the district court. The chairman of NYFA was deposed. The executive director of NYFA was deposed. We produced many thousands of documents. And, frankly, when you read their brief, it's interesting, after all that discovery, that they can't point to any evidence that shows the political expedience issue ñ I'm sorry, we're keeping you way over time ñ but if the question comes up, if we get by your first question and get to the question of whether this was the government acting as government or the government acting as a private party welching, whose burden is it in this kind of case? Because that's the thing where United Trusts, U.S. Trust, uses language which is quite strongly that it ought to be on the government and where we used the passive in Buffalo. Whose burden is it, then? MR. GOLDSTEIN. It's the plaintiff union's burden. And Your Honor was on the Buffalo panel, I know, and far be it for me to tell you about the intricacies of that decision. But I will read to you, if I may, one of the first paragraphs of that decision I think speaks to why it's their burden. What the Court said, when a state is sued for allegedly impairing the contractual obligations of one of its political subdivisions, even though it is not a signatory to the contract, the state will not be held liable for violating the contract's clause unless plaintiffs produce evidence that the state's self-interest, rather than the general welfare of the public, motivated the state conduct. JUSTICE BREYER. The language in U.S. Trust which says it is the, there are these three things which the government must show when the state is a party. MR. GOLDSTEIN. Yes, I think that it is the case. Those are state is a party. And I think those, those, the three things they have to show also are when you get sort of past all the other issues and you're just addressing whether it's reasonable and necessary. JUSTICE BREYER. I should tell you that in this article that I wrote in 1959, the question was whether the government had infringed on a contract. And Justice Harlan took the position that it had. And Justice Black, for whom I had clerked, took the opposite position. And in this article, I said Harlan basically had the better of it because what the question then was whether we presume that there is a paramount power under which the government was acting or whether the government must show that there was a paramount power under which it was acting and that the presumption that we usually have that the government is acting under a paramount power doesn't apply when there is a breach of contract, which sounds a lot like saying the burden is on the government. Your Honor, I did see that. I did see and read your article. It was in the Yale Law Journal and it's cited, it's cited in Buffalo Teachers. And I think what your Honor did there was dealing with the federal agency in a different  JUSTICE BREYER. Of course it was cited in Buffalo Teachers because I was on the panel. Justice Souter cited it once too, but that's about the only people who have read it. I'm sure that's not true. Thank you. Thank you, Your Honor. We'll hear from you after the hearing. Thank you for your attention. After. Oh. Oh, I'm sorry. If we'd known we were, you were coming, we might as well, we don't, we don't have you as a, as a person listed. Oh, you should. I signed in, but, okay. Yes. Mark Wenger on behalf of the County Appellants in Nassau County, the County Executive and the Comptroller of Nassau County. And while I don't know that anything could top what Mr. Gunther has already said, I'd like to say a few words about the issues that you've raised this morning. One, and I think very importantly is having started with that, anything could top what Mr. Gunther has said. Just be as brief as you can. I will try. I think it's significant that the argument against the wage freeze is essentially that they didn't have an alternative. They could not have possibly challenged the statute itself when it was passed in 2000. And that argument by these very plaintiffs was described as ludicrous when they brought an injunction proceeding in the Donahue case. In Donahue in 2012, Nassau County, the County Legislature passed a law that empowered the County Executive to freeze wages. And the unions were offended by that and marched into court immediately and argued to the Eastern District Court that this is an impairment today, even though no wage freeze had ever been implemented whatsoever. And what was it that we said? That it was an impairment? The unions all argued. I know what they argued, but of course they argued, so what? Your Honor, this was brought on as an injunction proceeding. So among the arguments that the county made, which were unsuccessful, was that there's no irreparable harm until the actual breach has occurred. And the union said, one does not need to wait until there is a breach. That is exactly the situation that's presented here. And what was the holding of the court?  The impairment occurred by the passage of the law that allowed the County Executive at some point in his discretion in the future to institute a wage freeze. Without more. And that was on a contract clause claim. Yeah. But at that point, the wage breach could be imposed regardless of any other reasons. Yes, but that wasn't the essence of their argument, nor was it the essence of the judge's decision. And if this statute allows an impairment of a wage freeze for whatever, for no reason whatever, then the statute can certainly have been attacked immediately. That's what Donahue said. It could have, and if they had done so at that time, they could have made the same arguments that they're making now, that it's too broad, that how can we possibly negotiate contracts with the threat of a wage freeze hanging over our heads? That possibility existed in 2000. Wage freeze didn't exist until then. The New York State legislature passed a law, as the contracts clause says, in 2000, and they could have marched into court and taken up their challenge then and argued that it's too broad. We don't know when our wages might be frozen. And that wage freeze legislation was incorporated into all the contracts that they negotiated thereafter. And when the agency created to exercise that authority pursuant to a very detailed process outlined in the Knife Act, simply implemented the authority that they were given, it should have come as no surprise. And their recourse at that time was an Article 78 proceeding. And I think they've been quite candid by describing that process as a standard that they're afraid of. They're afraid that this wage freeze will be upheld if it's subjected to an arbitrary and capricious standard in an Article 78. So they're shopping for the best standard they can get. They missed their chance in 2000. They wanted to argue that the wage freeze was unreasonable and not necessary under the Buffalo teacher standard. So they're trying to avoid the Article 78 process, even on remand. If there were a statute which said, we make a contract with somebody who is making plow shares, and we contract with you that we will not go to war. But the statute then says, and therefore, you should make plow shares for us rather than, you know, whatever it is that you turn your swords into plow shares. And then the statute said, but of course, if national necessity requires us to go to war, we will go to war regardless of this. Can that be attacked? Well, that's at the beginning, it sounds something like, or is that is exactly what the contract clause is about, which says, whether we say it in the statute or not, we can always go to war and you lose your plow shares. We can always freeze your wages if economic necessity requires. And whether a statute gives that authority or not, that is not a violation of a contract clause because the government cannot contract away its power to govern. And any statute which does no more than do that cannot possibly be attackable. Even though then it delegates authority to a agency to decide whether this is the government acting as government or the government acting as welcher. Well, I think the issue that you propose is whether the government can do that at any time, and I think the issue always has to be decided by looking at the specific language of the statute. Now, and does the fact that the statute says what this statute said do more than simply give the power to the government acting through this agency to do what the government has the power to do? This statute gave very clear guidance to NYFA as to what it could do. It has to first declare a control period. The control period can only be declared when there are very specific standards met. You can do that only if there's a 1% operating funds deficit and you have to apply generally accepted accounting principles. If you look at the actual language of the wage freeze provision, it incorporates the rest of the act. It says that you need to find that the wage freeze is essential, a very high standard to the maintenance of the county's financial plans and budget. Separate provisions detail what those require, and those are all incorporated into the wage freeze provision. That sounds to me like the statute simply saying to the agency, you may make a law which infringes a contract when this is necessary to govern. You've just told me exactly that. When you talk about incorporating the statute, I think you need to be a little more careful with your language. No, no, no, no. I'm saying that the wage freeze provision itself incorporates the other provisions. There was discussion about how broad the authority is in the statute and that NYFA by instituting the wage freeze was somehow legislating. And what I'm suggesting to you is that if you read the wage freeze provision, that the legislation was done by the legislature. They gave very detailed guidance to NYFA as to when it could exercise that authority. NYFA did not hold a hearing. There was no notice and comment. NYFA did what they were told to do by the legislature. That is not legislating. That's what the court of appeals found in Gress versus Brown. Is there anything to prevent the state legislature here, let's just say that we a wage freeze? Not at all. That's been done before. In the New York City example, the legislature can impose a wage freeze directly. They didn't do that here, but they, they gave clear guidance as to when NYFA could do so. And if the appellants did not like the statute and they felt somehow that that was, that created the prospect that their wages would be frozen and that they didn't understand when and how that would happen and how that would affect their collective bargaining, they had recourse. They can't come in here now and say they didn't because they argued the opposite. They could have sued in 2000. Thank you very much. Thank you. Now we'll hear from you. Yes. After 37 minutes of argument, it's hard to pick out those few points that I would like to make in my rebuttal. The legislation itself says that NYFA is performing quote, an essential government function and quote is acting as an instrumentality of the state. So those two phrases, that is a JA 224 and JA 234. You will find those exact phrases, an essential government function and an instrumentality of the state. 234, 224, which makes it exactly the same as the Sixth Circuit case. The power was delegated to the authority. Now I want to talk very briefly about Donahue. Donahue was a completely different case. And you should know that at the time, the County said the unions could not attack the enabling legislation because there's no contractual impairment whatsoever that has been implemented. That's a quote. That's what the union said. Then they also use the phrase. Are you saying that what that case said was this is written into the contract that we can do it. So if we do it, there's no breach of contract. No, I'm not saying that. I'm saying, first of all, I was summarizing the County's position was that the union couldn't attack and it was not right, but what I'm also distinguishing about Donahue is there, the County executive, the very person at the other side of the bargaining table was given unfettered, unilateral, limitless power to impair the contract. There was no limitation that is here that has to be in accordance with the contracts clause. So it was unlimited power. It was very different power. And that's why the unions knew they could attack it on the face of the legislation. It gave the power to the County executive and it was unfettered. That is not the case here. So it's a very distinguishable case. And the County was right then and saying there was no impairment. It can't be attacked. So it's a different case. I wanted to talk very briefly about Foley, which is also a very different case. Foley had to do with a statute of limitations issue. Was it an article 78 or was it a declaratory judgment? Anything else that that state court said, frankly, was dicta. It had nothing to do with the issue. They had to decide, are you timely within four months for an article 78, or is it a declaratory judgment? That's what they decided. The other line is a throwaway and it doesn't bind this court. And frankly, I think it was wrong. I also want to say that in its resolution, NYFA, who had the assistance of counsel itself said, quote, suspending increases in compensation, otherwise due to municipal employees under existing labor agreements, although authorized by the act implicates the contract clause of the United States. So NYFA itself knew that it had to act within that bound. And it said that its decision implicated the contracts clause. And that is at JA 292 to 293. Finally, to respond to Judge Park's question 37 minutes ago about didn't they realize foreseeability is a part of contracts clause analysis. It's something you take into consideration in deciding whether there's been a substantial impairment. So the fact that it may have been foreseeable is only something to be considered when conducting a contracts clause review. So those are the, I have a question for you. Sure. It is, you said that if we decide your way on the preliminary question, we should remand, uh, opposing counsel says there is enough on the record so that we can decide the question today ourselves of whether NYFA was acting as government or as a private party welching. Yes. What is it that you think we have to send it back for? Yes. And I'm glad you asked that because I did want to clarify, maybe there was a misunderstanding. We had a great deal of discovery there. There's a long record there, but that record has never been analyzed to make the three part determination. Fact finding is for the district court. Should this court look at that extensive fact record and start reading depositions and reading documents and making the fact findings that need to be made, that's what district courts do. Well, we can do it because of the record is there, whether it is wise for us or a good use of our time is another matter. But, uh, but it, this is not an issue where, uh, more facts are to, more data is to be collected by the district court. You're absolutely right. The record is there. I don't think the record is before you on this appeal of all of the discovery that's been taken. And of course you're right. Traditionally, that's what district courts do. They make findings of fact, which you can review under the appropriate standard. I should have also said in my brief rebuttal, something about that, the article 78 idea. Uh, it's a different review. We did seek it, but we sought it in the limited context of whether NYFA exceeded its authority. We didn't try to bring the constitutional argument to an article 78 court. And we don't think we have, have to do that. We have a right to come to federal court to determine whether the contracts clause of the United States constitution has been violated. Thank you, your honors. Thank you very much. Thank you. Very well argued. Reserved decision, we'll hear.